**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 11, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

DEVON JONATHAN SOUZA, a/k/a
Devon Jonathan Swan,

    Defendant - Appellant.

No. 23-8045
(D.C. No. 1:22-CR-00003-ABJ-1)
(D. Wyo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MATHESON**, **BRISCOE**, and **EID**, Circuit Judges.
_____

Defendant Devon Souza was convicted by a jury of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). At sentencing, the district court imposed a four-level enhancement pursuant to U.S.S.G. § 2K2.1(b)(6)(B) based upon its finding that, on an occasion separate from the offense of conviction, Souza possessed a firearm in connection with another felony offense. After applying that enhancement, the district court sentenced Souza to a

---

    [*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

term of imprisonment of 105 months, to be followed by a three-year term of supervised release.

Souza now appeals, arguing that the district court procedurally erred in applying the four-level enhancement pursuant to U.S.S.G. § 2K2.1(b)(6)(B). Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

I

On August 21, 2021, the Cheyenne Police Department (CPD) received a report that Souza had assaulted another person. Although CPD officers responded to the scene of the alleged crime, Souza left before the officers arrived. On August 24, 2021, an arrest warrant was issued for Souza.

On September 1, 2021, Wyoming Highway Patrol troopers observed Souza, accompanied by a female passenger, driving a red sport utility vehicle within the city limits of Cheyenne. The troopers, aware that Souza had several outstanding warrants, initiated a stop of Souza's vehicle. Souza, however, failed to stop and attempted to flee in the vehicle. After a short vehicle pursuit, Souza abandoned the vehicle, as well as his female passenger, and fled on foot. Souza was later taken into custody.

The troopers conducted a dog sniff of the exterior of Souza's abandoned vehicle. The dog alerted to the vehicle. That prompted the troopers to search the vehicle. During the search, the troopers found a Ruger .22 caliber pistol, with nine rounds of .22 caliber ammunition loaded inside the magazine, located inside a Fila brand bag in the rear driver's-side seat of the vehicle.

Agents from the Bureau of Alcohol, Tobacco, and Firearms (ATF) also responded to the scene. After learning that Souza had been taken into custody, ATF agents spoke with the female passenger in Souza's vehicle. The woman stated that Souza had been staying at her house for the past two days and had possessed a handgun during that time. The woman further stated that Souza had asked her for a bag and that she gave him an empty Fila bag. According to the woman, Souza was smoking methamphetamine and fentanyl while they were driving around in the vehicle running errands. The woman stated that after Souza saw a trooper activate the lights on his patrol vehicle, Souza told her to hide the drugs and then began fleeing from the trooper. The woman told the ATF agents that she was extremely fearful as Souza eluded the troopers and asked him several times to let her out of the vehicle.

Upon further investigation, ATF agents learned that Souza was a convicted felon. Specifically, ATF agents learned that Souza had previously been convicted in Wyoming state court of conspiracy to commit aggravated assault and battery, and conspiracy to interfere with a peace officer.

ATF agents sent the firearm seized from Souza's vehicle to the Wyoming State Crime Laboratory for DNA analysis. The lab results confirmed that Souza was the main contributor of DNA found on the firearm.

II

On January 12, 2022, a federal grand jury indicted Souza for being a convicted felon and an unlawful user of a controlled substance in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1), (3), and 924(a)(2).

Prior to trial, the government filed a notice of intent to present at trial, pursuant to Federal Rule of Evidence 404(b), evidence of "two prior incidents that occurred in 2021 in which Souza was accused of possessing a firearm." ROA, Vol. I at 21. One of those incidents allegedly occurred on February 2, 2021, at a Qdoba restaurant in Cheyenne and involved a bail bondsman named Steven Willadsen.

On April 10, 2023, the district court held an evidentiary hearing regarding the government's proposed Rule 404(b) evidence. During the hearing, Willadsen testified that his company, 307 Bail Bonds, had bonded Souza out of jail on two separate occasions and that, after doing so, an arrest warrant was issued for Souza for failing to report for drug and alcohol testing. *Id*. Vol. III at 20, 23–24, 25. Willadsen testified that he began looking for Souza and, on February 1, 2021, received a tip from an informant that Souza would be eating at a Qdoba restaurant in Cheyenne. *Id*. at 27. Willadsen and one of his bail enforcement agents drove to the Qdoba with the intent to take Souza into custody. *Id*. at 28. At the restaurant, Willadsen persuaded a "very stocky" customer to assist him by blocking the restaurant door in order to prevent Souza from leaving while Willadsen attempted to apprehend Souza inside the restaurant. *Id*. at 29. When Souza arrived at and entered the restaurant, Willadsen entered immediately after Souza and then "announce[d] who [he] was" and attempted

4

to "put [Souza] up against the wall" by grabbing Souza's right wrist and placing a palm in the middle of Souza's back. *Id*. at 30. Souza responded by spinning around and backing away from Willadsen. *Id*. Willadsen deployed his Taser on Souza's chest area. *Id*. at 31. According to Willadsen, the Taser "had no effect on [Souza] whatsoever." *Id*. Willadsen testified that Souza then "headed for the door[s]" of the restaurant, where he "threw" Willadsen's assistant "out of the way." *Id*. Souza exited the first door, which placed him in "a little vestibule" between the first and second doors to the restaurant. *Id*. The customer who Willadsen had enlisted to help him was standing just outside the second door to the restaurant and pushing on the second door in order to prevent Souza from exiting. *Id*. at 32. Willadsen confronted Souza in the vestibule, and Souza responded by saying, "Steve, I'm going to fucking kill you." *Id*. at 33. Willadsen replied, "Devon, you need to stop." *Id*. Souza then said to Willadsen, "Steve, I'm going to fucking shoot you." *Id*. According to Willadsen, Souza then "squatted down with his shoulder against the door" and "reach[ed] in and pull[ed] a gun." *Id*. Upon seeing the gun, Willadsen "immediately backed off" and returned back inside the restaurant. *Id*. at 34. At the same time, the customer who Willadsen had enlisted to help him also "backed off," which allowed Souza to exit the restaurant and leave in his vehicle. *Id*.

Willadsen testified on direct examination that, based upon his lengthy military service and his time working as a bail bondsman, he was certain that the gun, which he classified as a "semiautomatic" "pistol," was a real firearm and "not an airsoft gun or a BB gun or something like that." *Id*. at 34–35. Willadsen explained that "there

are certain characteristics of airsoft pistols that [he] know[s] about that you look for," such as "a little yellow or little red stripe going around the very tip of the barrel." *Id*. at 36. Willadsen further noted that "[t]he trigger mechanism" of an airsoft pistol "is so much different than" a real firearm "because it takes a lot of pull to engage the $CO_2$ cartridge" in an airsoft gun. *Id*. Willadsen stated: "I have not seen an airsoft pistol that I couldn't distinguish . . . from a real gun. This was a real gun." *Id*.

On cross-examination, Willadsen was asked to describe his Navy "service-related experience with handguns." *Id*. at 38. Willadsen testified: "I think my letters of commendation and my—and my medals speak for themselves. I'm an expert rifle, expert pistol, sniper." *Id*. Willadsen further testified that during his military career in the Navy, he was engaged in "handgun training" and "other types of firearms formats." *Id*. Willadsen testified that he also served in the Army and continued to have experience with all different types of "formats, including handguns, pistols, [and] semiautomatics." *Id*. at 39. As for the gun that Souza wielded, Willadsen testified that it "[c]ould have been a .38, could have been a .40, could have been a .45." *Id*. at 51. Willadsen also again testified that the gun "was a semiautomatic" and not a revolver. *Id*. Lastly, Willadsen testified: "In my heart, in my soul, in my mind, there's no doubt in my mind it was a real gun, and there was no doubt in my mind that [Souza] intended on killing me." *Id*. at 54.

On redirect, Willadsen testified that he was standing approximately six feet away from Souza inside the vestibule when Souza pulled out the gun from his waistband. *Id*. at 56.

6

On April 13, 2023, the district court issued a written order denying admission at trial of the government's proposed Rule 404(b) evidence relating to Souza's "alleged possession of a firearm at a Qdoba restaurant in Cheyenne, Wyoming on February 2, 2021." *Id*. at 45. The district court explained that the proposed evidence was "too prejudicial to be admissible under Rule 403." *Id*. at 48. The district court also expressed "concerns with the remoteness and particularity of the . . . proffered evidence." *Id*. Lastly, the district court concluded that "the probative value of the February incident [wa]s substantially outweighed by the danger of unfair prejudice to" Souza. *Id*. at 52.

The case against Souza proceeded to trial on May 8, 2023. At the conclusion of the evidence, the jury found Souza guilty of the single count alleged in the indictment.

The probation office prepared a presentence investigation report (PSR) and submitted that to the district court and the parties on May 22, 2023. In calculating Souza's total offense level, the PSR applied a base offense level of 20 pursuant to U.S.S.G. § 2K2.1(a)(4)(A) because Souza committed the offense of conviction after "sustaining one felony conviction for a crime of violence." *Id*., Vol. II at 84. The PSR in turn imposed a four-level enhancement pursuant to U.S.S.G. § 2K2.1(b)(6)(B) because Souza "possessed a firearm in connection with a felony offense," i.e., threatening to kill Willadsen at the Qdoba restaurant on February 2, 2021. *Id*. at 82–83. The PSR also applied two two-level enhancements pursuant to U.S.S.G. §§ 3C1.1 and 3C1.2 for obstruction of justice. This resulted in a total offense level

of 28.  The PSR in turn calculated a criminal history score of 19 and a criminal history category of VI.  Together, the total offense level of 28 and the criminal history category of VI resulted in an advisory Guidelines sentencing range of 140 to 175 months.  Because, however, the statutory maximum penalty for the offense of conviction was 120 months, the PSR concluded that "the guideline imprisonment range [wa]s therefore 120 months."  *Id*. at 104 (citing U.S.S.G. § 5G1.1(a)).

Souza filed written objections to the PSR.  Souza objected, in relevant part, "to the four-level enhancement added" in the PSR "pursuant to U.S.S.G. § 2K2.1(b)(6)(B)."  *Id*. at 110.

The district court sentenced Souza on June 26, 2023.  During the sentencing hearing, the district court addressed Souza's objection to the proposed § 2K2.1(b)(6)(B) enhancement.  The district court found, based upon the testimony from the April 10, 2023 evidentiary hearing, that while Souza was attempting to flee from the restaurant, he "reached into the front of his pants and brandished a black firearm, pointed it at the bondsman, and stated 'I will kill you.'"  ROA, Vol. III at 478–79.  The district court acknowledged that "[w]e don't have that firearm."  *Id*. at 480.  But the district court noted "[t]he propensity of [Souza] to use firearms" was supported by other incidents to which Souza pled guilty.  *Id*.  And the district court found the enhancement was supported by "a preponderance of the evidence."  *Id*. at 482.

Souza's counsel asked the district court "to apply a variance to account for credit that [Souza] arguably deserves because he's not getting credit for any of the

8

time that he's served presentence in Federal custody and he's been in Federal custody for almost 18 months." *Id*. at 483. The district court granted that request for a downward variance by "impos[ing] a sentence at" a total offense level of "24" and a criminal history category of VI. *Id*. at 501. The district court ultimately sentenced Souza to a term of imprisonment of 105 months, to be followed by a three-year term of supervised release.

Final judgment was entered in the case on June 26, 2023. Souza thereafter filed a timely notice of appeal.

### III

Souza argues in his appeal that the sentence imposed by the district court was procedurally unreasonable because the district court erred in imposing the four-level enhancement pursuant to U.S.S.G. § 2K2.1(b)(6)(B) for Souza having possessed a firearm in connection with another felony offense. Souza argues in support that "the government did not prove that the weapon that appeared to be a firearm was actually a firearm that met the statutory requirements for the enhancement." Aplt. Br. at 4. Souza notes that "[t]he weapon was never recovered by law enforcement" and, as a result, "no testing or analysis was done to verify that it was an actual firearm." *Id*.

"We review the district court's application of the guidelines de novo and the court's underlying factual findings for clear error." *United States v. Brown*, 85 F.4th 1291, 1295 (10th Cir. 2023). "The government must prove . . . uncharged conduct supporting sentencing increases and enhancements by a preponderance of the evidence." *Id*. A "district court's factual finding as to whether the government met

this burden 'is not clearly erroneous unless it is without factual support in the record, or unless the court after reviewing all the evidence, is left with a definite and firm conviction that the district court erred.'" *Id*. (quoting *United States v. Chavez*, 734 F.3d 1247, 1250 (10th Cir. 2013)).

Section 2K2.1(a) of the Sentencing Guidelines sets forth various base offense levels for offenses involving the unlawful receipt, possession, or transportation of firearms or ammunition. Of relevance here, § 2K2.1(a)(4) directs a district court to impose a base level of 20 if "the defendant committed any part of the instant offense subsequent to sustaining one felony conviction of either a crime of violence or a controlled substance offense." U.S.S.G. § 2K2.1(a)(4)(A). As noted, the PSR and in turn the district court adopted a base offense level of 20 because Souza committed the offense of conviction after having previously been convicted of two crimes of violence in Wyoming state court, i.e., the felony offenses of conspiracy to commit aggravated assault and conspiracy to interfere with a peace officer.

Section 2K2.1(b) in turn sets forth various enhancements to the base offense level based upon "Specific Offense Characteristics." U.S.S.G. § 2K2.1(b). Of relevance here, § 2K2.1(b)(6)(B) provides that "[i]f the defendant . . . used or possessed any firearm . . . in connection with another felony offense . . . , increase by 4 levels." U.S.S.G. § 2K2.1(b)(6)(B). The term "firearm," as used in § 2K2.1, "has the meaning given that term in 18 U.S.C. § 921(a)(3)." *Id*. cmt. n.1.

In this case, the district court found that, for purposes of § 2K2.1(b)(6)(B), the government met its burden of proving by a preponderance of the evidence that Souza

10

pointed an actual firearm at Willadsen and threatened to kill Willadsen as he fled from the restaurant on February 1, 2021.  And that evidence, the district court concluded, established that Souza used or possessed a firearm in connection with a felony offense, i.e., aggravated assault and battery under Wyoming state law, for purposes of § 2K2.1(b)(6)(B).

Although Souza argues that the district court's factual finding that Souza possessed and used an actual firearm during the February 1, 2021 incident is clearly erroneous, we disagree.  It is true, to be sure, that the weapon was never recovered or in turn examined by law enforcement officials.  But we do not believe that was necessary in this case for the government to meet its burden of proof for purposes of § 2K2.1(b)(6)(B).  As the government correctly notes, three distinct categories of evidence in this case helped support the district court's finding.  The first category of evidence was Willadsen's testimony, based upon his lengthy military experience, that he believed it to be a real firearm and not a toy gun or airsoft weapon.  The second was Willadsen's testimony that Souza stated, "I will kill you," as he pointed the weapon at Willadsen.  In making this statement, Souza insinuated that the weapon had lethal capabilities, i.e., that it was a real firearm.  The third and final category of evidence, as noted by the district court, was Souza's historic propensity to use and possess real firearms.  Considered together, we conclude that this evidence was sufficient, under the applicable preponderance of the evidence standard, to support the district court's finding that Souza possessed and used an actual firearm during his encounter with Willadsen on February 1, 2021.

11

For these reasons, we conclude that the district court did not err in applying the four-level enhancement pursuant to § 2K2.1(b)(6)(B), and we in turn reject Souza's assertion that his sentence was procedurally unreasonable.

## IV

The judgment of the district court is AFFIRMED.

Entered for the Court

Mary Beck Briscoe
Circuit Judge